32736. BRUCK et al. v. CITY OF TEMPLE et al.

MARSHALL, Justice.

The appellants are residents of a previously unincorporated area of Carroll County, which was annexed into the City of Temple under the authority of a local annexation statute passed by the General Assembly. Act No. 748 (Ga. L. 1977, pp. 4519-4523) (referred to hereinafter as the local Act).

Section 2 of the local Act (Ga. L. 1977, p. 4521) directs the election superintendent of the City of Temple to issue the call for an election for the purpose of submitting the Act to the electors of the city and the electors residing within the area proposed to be annexed.[1] Upon a majority vote of those voting, it is provided that the Act shall become of full force and effect, otherwise it shall be void.

After the call for an election had been issued, but

_____

[1] Under decisions of this court, the General Assembly may, however, enact local legislation annexing territory to a municipality without conditioning the annexation measure on local voter approval. *Holloway v. Mayor &c. of Whitesburg,* 225 Ga. 152, 153 (166 SE2d 576) (1969); *Toney v. Mayor &c. of Macon,* 119 Ga. 83 (46 SE 80) (1903).

prior to the election being held, the appellants filed suit to have the election enjoined and the local Act declared unconstitutional.

The appellants argued at trial, and on appeal, that the local Act is unconstitutional because it does not make provision for including the annexed territory within the city council electoral districts or for creating a new electoral district to represent the appellants. Conceding that under the city charter the appellants have the right to vote for mayor and city councilmen, they argue that under the local Act they are deprived of the right to run for election to these posts.

The municipal governing authority of the City of Temple is the city council, which is composed of the mayor and five councilmen. Under the 1974 City Charter (Ga. L. 1974, pp. 3619-3622) the city is divided into five electoral districts, with candidates for city council having to qualify for election from the district in which they reside.

The trial court denied the appellants' prayers for declaratory and injunctive relief. The election was held, and a majority of those voting voted to approve the local Act. The city has since enacted an ordinance under the 1965 Municipal Home Rule Act,[2] Code Ann. § 69-1017 (b) (1) (Ga. L. 1965, pp. 298, 299), which amends the city charter. Under this ordinance, the five city council electoral districts have been broadened to encompass the newly annexed territory.

_____

[2] The Municipal Home Rule Act of 1965 (Code Ann. §§ 69-1015—69-1021; Ga. L. 1965, p. 298 et seq.) was enacted pursuant to a 1954 constitutional amendment enabling the General Assembly to delegate legislative authority to municipalities. Code Ann. § 2-6001 (Art. IX, Sec. III, Par. I, Constitution of Georgia). The underlying purposes of the Municipal Home Rule Act and the history of home rule in Georgia have been canvassed in several legal periodicals. See, e.g., Sentell, "Home Rule": Its Impact on Georgia Local Government Law, 8 Ga. S. B. J. 277 (1972); Sentell, Home Rule Benefits or Homemade Problems for Georgia Local Government? 4 Ga. S. B. J. 317 (1969); Smalley, The Municipal Home Rule Act of 1965, 3 Ga. S. B. J. 333 (1967).

It is in this posture that this appeal is presented to us.
*Held:*

1. The appellees argue that at the time the appellants filed their petition to have the local Act declared unconstitutional, it had not been approved by local referendum. The appellees contend, therefore, that at least at the trial level the present case did not constitute a "justiciable controversy." This argument might have been more accurately asserted under the rubric of "ripeness" than "justiciability." In any event, we have determined that since a call for the election had been issued on the date suit was filed, this case was sufficiently justiciable or ripe for decision at that time.

2. Although there has been no motion to dismiss on this ground, the appellees have raised the question of whether the appeal is moot since the election has been held, the local Act approved, and the annexed areas included by local ordinance within the city council electoral districts. Since the election has been held, the injunctive features of this case are indeed moot. See *Richmond County Business Assn. v. Richmond County,* 222 Ga. 772 (152 SE2d 738) (1966). Also, the failure of the local Act to provide for extension of wards or creation of new wards, which is at least the ostensible cause for the appeal, has been rectified. However, the appellants have alleged that this omission from the local Act renders it unconstitutional from its inception. That issue, in our opinion, is still alive.

3. As early as 1894, this court was speaking in nearly absolute terms of the General Assembly's power to annex territory to the corporate limits of a municipality (*Cash v. Town of Douglasville,* 94 Ga. 557 (20 SE 438) (1894)), a power referred to as "annexation by legislative fiat."[3] Under pronouncements of the United States

---

[3] Although the traditional method of annexation in Georgia has been the General Assembly's enactment of a local statute, there are three general statutes presently in existence which delegate the legislative power of annexation to the municipality. See Code Ch. 69-9, Annexation of Territory.

Supreme Court in Hunter v. Pittsburgh, 207 U. S. 161 (28 SC 40, 52 LE 151) (1904), this power of a state legislature over municipal annexation is virtually immune from federal constitutional attack.[4]

"Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. . . . The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole, or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects, the State is supreme and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provisions of the Constitution of the United States." Id., 207 U. S. 178.

The following decisions of this court show the multiplicity of attacks on local annexation statutes which have been made and which have failed: *Holloway v. Mayor &c. of Whitesburg,* 225 Ga. 152, supra; *Lee v. City of Jesup,* 222 Ga. 530 (150 SE2d 836) (1966), cert. den. 386 U. S. 993 (1966); *Schneider v. City of Folkston,* 207 Ga. 434 (62 SE2d 177) (1950); *Davidson v. Town of Kirkwood,* 152 Ga. 357 (110 SE 154) (1921); *White v. City of Atlanta,* 134 Ga. 532 (68 SE 103) (1910); *Tony v. Mayor &c. of Macon,* 119 Ga. 83, supra, app. dismissed, 195 U. S. 625 (1904); *Mayor &c. of Macon v. Hughes,* 110 Ga. 795 (36 SE 247) (1900); *Cash v. Town of Douglasville,* 94 Ga. 557, supra.

There is no requirement, statutory or otherwise, that

---

[4] The only inroad on these broad pronouncements to date has been Gomillion v. Lightfoot, 364 U. S. 339 (81 SC 125, 5 LE2d 110) (1960), where the annexation resulted in gerrymandered electoral districts diluting black voting strength in violation of the 15th Amendment. The appellants in this case have not even intimated at trial or on appeal that the annexations here would have such an effect.

the annexation statute itself make provision for the myriad adjustments between the annexed territory and the municipality which the annexation necessitates. We decline to establish such a requirement by judicial fiat because this, in our opinion, is clearly beyond the statute's purview.

Here, the city argues that it was acting under its general home rule powers under Code Ann. § 69-1017 (a) (Ga. L. 1965, pp. 298, 299; 1966, p. 296; 1976, p. 1429) when it passed the ordinance broadening the city council electoral districts to include the newly annexed areas. Section 69-1017 (a) provides, in pertinent part: "The governing authority of each municipality shall have legislative power to adopt clearly reasonable ordinances, resolutions or regulations relating to its property, affairs and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto."

The appellants advance the argument that the city's passage of this ordinance is an admission that the local Act is unconstitutional, and that this attempt to cure its unconstitutionality is invalid under Code Ann. §§ 69-1017 (b) (1) and 69-1018 (a) (1) (Ga. L. 1965, pp. 298, 302; 1966, pp. 296, 298; 1970, pp. 346, 347; 1973, pp. 778, 780).

The appellants rely on the following sentence contained in § 69-1017 (b) (1): "No amendment hereunder shall be valid to change or repeal . . . a local Act of the General Assembly ratified in a referendum by the electors of such municipality unless at least 12 months have elapsed after such referendums." The appellants' reliance on this Code provision is misplaced because the municipal ordinance did not "change or repeal," but rather implemented, the local annexation Act.

Code Ann. § 69-1018 (a) (1), on which the appellants also rely, provides that, "[t]he power granted to municipalities in subsections (a) and (b) of section 69-1017 shall not be construed to extend to . . . [a]ction affecting the composition, form, procedure for election or appointment, continuance in office and limitation thereon for the members of the Municipal Governing

Authority, . . ." Section 69-1018 (a) specifies that these "matters shall be the subject of general law or the subject of local Acts of the General Assembly to the extent that the enactment of such local Acts is otherwise permitted under the Constitution."

This court had occasion to construe Code Ann. § 69-1018 (a) (1) in *Jackson v. Inman,* 232 Ga. 566 (207 SE2d 475) (1974). There, it was held that a special Act of the General Assembly (Ga. L. 1973, p. 2188 et seq.) was necessary in order to authorize the City of Atlanta to implement a vast administrative reorganization of city government, which the city effectuated through enactment of an ordinance under the home rule procedures of Code Ann. § 69-1017 (b) (1). This court held that such fundamental and substantive changes in city government could not be made by the municipality under general home rule laws. In reaching its decision, the court noted, "The General Assembly has reserved the legislative power to enact new charters for existing cities when such charters include drastic changes in the composition and form of city government and the election and terms of office of the members of the governing authority of cities as in this new charter for Atlanta. This specific power was expressly reserved by the General Assembly in the 1965 Home Rule Act and is found in Code Ann. § 69-1018 (a) (1)." Id. at p. 569.

As we have stated, the municipal ordinance was not in contravention or derogation of the local annexation Act, but merely served to implement it. Under the reasoning of *Jackson v. Inman,* supra, the city's enactment of the ordinance was not an unauthorized exercise of home rule power under Code Ann. § 69-1018 (a) (1).

Since the ordinance amended the city charter, the authority of the municipality to adopt it can not be derived from Code Ann. § 69-1017 (a), which prohibits the enactment of local ordinances inconsistent with municipal charter provisions. The ordinance was adopted pursuant to the procedures set out in Code Ann. § 69-1017 (b) (1), which establishes one of two methods through which the municipality may amend its charter without the intervention of the General Assembly. See also Code

Ann. § 69-1017 (b) (2). The ordinance was properly adopted under this home rule provision and is sustainable thereunder.

*Judgment affirmed. All the Justices concur, except Hill, J., who dissents.*

ARGUED SEPTEMBER 21, 1977 — DECIDED DECEMBER 5, 1977 — REHEARING DENIED DECEMBER 19, 1977.

*C. C. Perkins,* for appellants.
*Charles A. Thomas, Jr., Arthur K. Bolton, Attorney General,* for appellees.
*Walter C. Sumner,* amicus curiae.

HILL, Justice, dissenting.

The city has enacted a home rule ordinance which alters the city council election districts for members of the city council (not its voting precincts) to include the newly annexed areas. That is "Action affecting the composition, form, procedure for election . . . for the members of the Municipal Governing Authority . . ." and thus is not allowed under home rule. Code Ann. § 69-1018 (a) (1); *Jackson v. Inman,* 232 Ga. 566, 570 (207 SE2d 475) (1974).

I therefore respectfully dissent.